T.C. Memo. 2000-371


UNITED STATES TAX COURT


SALIH M. ZAMZAM AND MARIAM ZAMZAM, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SALIH M. ZAMZAM M.D., INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 2984-97, 3004-97.      Filed December 7, 2000.


Salih M. Zamzam and Mariam Zamzam, pro sese in docket No. 2984-97.

Salih M. Zamzam (an officer), for petitioner in docket No. 3004-97.

Mary Ann Waters and John C. McDougal, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FOLEY, Judge:  By notice dated November 15, 1996, respondent determined the following deficiencies and penalties relating to petitioners' Federal income taxes:

Salih M. Zamzam and Mariam Zamzam, docket No. 2984-97

| | | Penalties | |
|---|---|---|---|
| Year | Deficiency | Sec. 6663 | Sec. 6662 |
| 1990 | $74,453 | $36,252 | $4,496 |
| 1991 | $74,390 | $44,674 | $2,475 |
| 1992 | $49,635 | $37,226 | -- |
| 1993 | $30,703 | $23,027 | -- |
| 1994 | $26,707 | $16,586 | $1,278 |

Salih M. Zamzam, Inc. (ZMDI), docket No. 3004-97

| | | Penalty |
|---|---|---|
| Year | Deficiency | Sec. 6663 |
| 1990 | $58,210 | $43,657 |
| 1991 | $72,892 | $48,230 |
| 1992 | $57,117 | $38,906 |
| 1993 | $34,335 | $25,379 |
| 1994 | $24,788 | $17,632 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for decision are whether: (1) Petitioners failed to report income relating to 1990 through 1994; (2) Salih M. Zamzam M.D., Inc. (ZMDI) paid constructive dividends to the Zamzams from 1990 through 1994; (3) ZMDI was entitled to certain deductions relating to 1991 through 1994; and (4) petitioners are liable for fraud penalties.

## FINDINGS OF FACT

When their respective petitions were filed, Salih M. Zamzam and Mariam Zamzam resided, and ZMDI had its principal place of business, in Grundy, Virginia.

During 1990 through 1994, the Zamzams maintained personal accounts, and ZMDI maintained its corporate account, at Grundy National Bank. The Zamzams also maintained brokerage accounts with Robert Thomas Securities and J.C. Bradford and Company. During 1990 and 1991, the Zamzams transferred $1,900,000 from their personal checking account to foreign banks, and, during 1995, $2,228,968 from their U.S. brokerage accounts to accounts in Switzerland.

Dr. Zamzam was a licensed physician, and an employee, president, sole director, and sole shareholder of ZMDI. Mrs. Zamzam was ZMDI's office manager. ZMDI paid salaries to Dr. and Mrs. Zamzam. In 1990 through 1994, ZMDI did not authorize payments in excess of Dr. Zamzam's salary, and the Zamzams' Forms W-2, personal tax returns, and ZMDI's corporate tax returns, did not reflect any payments made by ZMDI in excess of the Zamzams' salaries.

Mrs. Zamzam was primarily responsible for ZMDI's daily receipts journals and bank deposits. The accountant who prepared ZMDI's corporate tax returns advised the Zamzams to deposit all corporate receipts into the corporate account to ensure that all corporate income was properly reported. The Zamzams diverted to their personal account, corporate receipts totaling $181,783, $187,914, $148,260, $90,295, and $60,317 during 1990 through 1994, respectively. ZMDI did not report as income corporate

receipts that were not deposited into the corporate account, nor did the Zamzams report as income the amounts diverted to their personal use.

During the years in issue, ZMDI subleased to Tri-City Opticians (Tri-City) part of the building it occupied for $6,600 per year. Tri-City paid both the rent and its portion of the utility bill directly to ZMDI. ZMDI deducted all of the lease and utility payments but did not report Tri-City's payments as income. In addition, ZMDI claimed deductions for a variety of expenses in 1991 through 1994 that exceeded ZMDI's payments.

In 1992, respondent began an examination of ZMDI's returns. In 1993, during an examination of the Zamzams' personal returns, respondent discovered the unreported personal income and corporate receipts. The Zamzams' failure to explain the deposits to their personal account led to a criminal investigation.

During the course of respondent's examinations and the criminal investigation, the Zamzams made numerous false statements to respondent's agents, including statements that all money in their personal account had been taxed; all corporate receipts were deposited into the corporate account; and they did not have foreign investments or bank accounts.

The Zamzams were indicted and convicted, pursuant to section 7201, of tax evasion relating to their 1990 through 1994 personal returns. In addition, Mrs. Zamzam was indicted and convicted,

pursuant to section 7206(2), of aiding and assisting in the preparation of false 1990 through 1994 corporate returns, and Dr. Zamzam was indicted and convicted, pursuant to section 7206(1), of signing the false 1991, 1992, and 1994 corporate returns. Petitioners appealed their convictions. Dr. Zamzam's convictions were upheld by the Court of Appeals for the Fourth Circuit on June 4, 1999, and Mrs. Zamzam's appeal was dismissed by the Fourth Circuit Court of Appeals on July 29, 1999.

                              OPINION

I.  Unreported Income

    Respondent determined that the Zamzams and ZMDI had unreported income attributable to the Zamzams' diversion, during the years in issue, of corporate receipts to their personal use. Respondent also determined that the Zamzams had not reported all of their wage income in 1991.

    Gross income includes all income from whatever source derived. See sec. 61(a). Every taxpayer is required to maintain adequate records of taxable income. See sec. 6001. If a taxpayer fails to maintain such records, respondent may reconstruct income in accordance with a method that clearly reflects the full amount of income received. See sec. 446(b); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). Respondent used the bank deposits method to reconstruct petitioners' income for the years in issue. Petitioners have the burden of proving

that respondent's bank deposits analysis is erroneous. See Parks v. Commissioner, 94 T.C. 654, 658 (1990). Petitioners, however, failed to present any credible evidence establishing that respondent's computation of unreported income is incorrect. See Welch v. Helvering, 290 U.S. 111, 115 (1933). Therefore, we sustain respondent's determination of the amount of unreported income for both the Zamzams and ZMDI.

## II. Constructive Dividends

Respondent determined that the corporate receipts diverted to the Zamzams' personal use were constructive dividends from ZMDI. A shareholder receives a constructive dividend when payment from a corporation to or for the benefit of such shareholder confers an economic benefit on the shareholder. See Nobel v. Commissioner, 368 F.2d 439, 442-443 (9th Cir. 1966); Truesdell v. Commissioner, 89 T.C. 1280, 1292 (1987).

Petitioners contend that the diverted funds were compensation to Dr. Zamzam and deductible by ZMDI pursuant to section 162(a)(1). Payments are deductible, however, only when they are intended as compensation. See King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 514 (1992). The testimony and documentary evidence establish that ZMDI did not intend that these payments be compensation and that the Zamzams received an economic benefit from the funds they diverted from

ZMDI. Thus, we conclude the Zamzams received constructive dividends, not compensation.

Petitioners further contend that respondent is collaterally estopped from contending that the payments to the Zamzams were not compensation. We disagree. On February 28, 1997, the U.S. District Court for the Western District of Virginia at Abingdon, Virginia, held, pursuant to section 7429 (i.e., relating to a jeopardy assessment), that these payments could have been deducted by the corporation as compensation. Collateral estoppel precludes the relitigation of any issue of fact or law that is actually litigated and necessarily determined by a valid and final judgment. See Montana v. United States, 440 U.S. 147, 153 (1979); Wright v. Commissioner, 84 T.C. 636, 639 (1985). The issue before us, however, is the ultimate tax liability, whereas in the section 7429 jeopardy proceeding the issue was the reasonableness of the provisional jeopardy assessment. Because the issues in the deficiency case are not identical to those litigated in the section 7429 proceeding, collateral estoppel is not applicable. See Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990). Further, the legislative history of section 7429 states that a trial court's decision in a section 7429 proceeding "will have no effect upon the determination of the correct tax liability in a subsequent

proceeding." S. Rept. 94-938, at 365 (1976), 1976-3 C.B. (Vol. 3) 57, 403.

III. Deductions

Respondent determined that ZMDI claimed deductions for expenses in 1991 through 1994 that exceeded its payments. Petitioners failed to present evidence establishing its entitlement to these deductions. See Welch v. Helvering, supra at 115. Accordingly, respondent's determination is sustained.

IV. Fraud Penalty

Respondent determined that petitioners were liable, pursuant to section 6663(a), for fraud penalties. Respondent must establish by clear and convincing evidence that for each year in issue an underpayment of tax exists and some portion of the underpayment is due to fraud. See Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). After respondent has established that any portion of the underpayment is due to fraud, the entire underpayment is treated as attributable to fraud, unless petitioner establishes that any portion is not attributable to fraud. See sec. 6663(b).

Fraud is established by proof of intent to evade tax believed to be owing. See Clayton v. Commissioner, 102 T.C. 632 (1994). Respondent may prove intent to evade tax by circumstantial evidence, see Davis v. Commissioner, T.C. Memo. 1991-603, which may include substantial understatement of income,

inadequate books and records, failure to file returns, concealment of assets, failure to cooperate with tax authorities, and participation in or concealment of illegal activities. See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).

A.    Fraud Penalty Relating to the Zamzams

A taxpayer convicted under section 7201 is collaterally estopped from denying liability for the civil fraud penalty because the elements of criminal tax evasion and civil fraud are identical. See Moore v. United States, 360 F.2d 353, 356 (4th Cir. 1965). Thus, having been convicted of criminal tax evasion pursuant to section 7201, the Zamzams are liable for the section 6663(a) fraud penalty. In addition, the Zamzams failed to establish, pursuant to section 6663(b), that any portion of their underpayment was not attributable to fraud. Accordingly, the penalty applies to the entire underpayment of tax for 1990 through 1994.

B.    Fraud Penalty Relating to ZMDI

Dr. Zamzam was the president and sole shareholder of ZMDI, and the Zamzams fraudulently diverted corporate receipts into personal accounts. As a result, his actions are imputed to ZMDI. See Loftin & Woodward, Inc. v. United States, 577 F.2d 1206, 1244 (5th Cir. 1978)(holding that the court may impute the fraud of a controlling shareholder or officer to the corporation). The failure to report significant corporate income, false statements

to revenue agents, and transfer of funds to undisclosed foreign accounts establish the corporation's fraudulent intent. Petitioners failed to establish, pursuant to section 6663(b), that any portion of the underpayment was not due to fraud. Accordingly, ZMDI is liable for the section 6663(a) fraud penalty relating to the entire underpayment of tax in 1990 through 1994.

Contentions we have not addressed are moot, irrelevant, or meritless.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.