MARK W. MAY AND CYNTHIA R. MAY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

CYNTHIA R. MAY, PETITIONER, AND MARK W. MAY, INTERVENOR *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 14385–05, 4782–07.　　　Filed October 24, 2011.

P–H's corporation reduced P–H's paycheck by amounts that were not remitted to the Government. R determined fraud penalties and disallowed deductions for State and local income taxes. Ps claim this Court does not have jurisdiction to redetermine underpayments, that no underpayments exist, that P–H is not liable for fraud penalties, and that the deductions for State and local taxes are proper. *Held*: This Court has jurisdiction to redetermine the applicability of sec. 6663, I.R.C., penalties for fraud resulting from overstated withholding tax credits. *Held*, *further*, an "underpayment" includes a taxpayer's overstated credits for withholding under the rule in *Feller v. Commissioner*, 135 T.C. 497 (2010). *Held*, *further*, sec. 1.31–1(a), Income Tax Regs., is inapplicable because funds due to the Government were not actually withheld from P–H's wages. This is a matter of first impression for this Court, and we adopt the test applied in *United States v. Blanchard*, 618 F.3d 562 (6th Cir. 2010). *Held*, *further*, P–H is liable for fraud penalties under sec. 6663, I.R.C. *Held*, *further*, Ps are entitled to a partial deduction for local income taxes paid.

Mark W. May and Cynthia R. May, pro sese.
*Edward Lee Walter*, for respondent.

GOEKE, *Judge*: Respondent determined deficiencies in petitioners' 1994, 1995, and 1996 joint Federal income taxes of $7,659, $10,389, and $8,771, respectively, as a result of

147

unpaid State and local income taxes deducted on petitioners' returns. Respondent also determined penalties for fraud under section 6663[1] for 1994, 1995, and 1996 against Mark May (Mr. May) of $84,957.75, $89,748.75, and $70,160.25, respectively, resulting from the deficiencies and overstated credits for taxes withheld from wages. Respondent separately determined that Cynthia May (Mrs. May) is not entitled to relief under section 6015 from joint and several liability for the years at issue. The cases were then consolidated for trial. After trial respondent conceded that Mrs. May is entitled to relief under section 6015(b) for the years at issue, resolving all issues pertaining to her. After this concession, the issues remaining for decision are:

(1) Whether the Court has jurisdiction to redetermine the underpayments for purposes of calculating the section 6663 fraud penalties when a portion of the underpayment for each taxable year resulted from overstated credits for taxes withheld from wages. We hold that the Court does have jurisdiction to determine the correct amounts of the underpayments and corresponding penalties;

(2) whether Mr. May is liable for the section 6663 fraud penalties for the taxable years at issue with respect to the claimed withholding tax credits. We hold that Mr. May is so liable; and

(3) whether Mr. May is liable for the deficiencies resulting from disallowed deductions for State and local income taxes paid and for section 6663 fraud penalties with respect to such deficiencies. We hold that Mr. May is liable for the deficiencies in part and for section 6663 fraud penalties with respect to the remaining deficiencies.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petition was filed, Mr. May was incarcerated in Kentucky; Mrs. May resided in Ohio.

During 1994, 1995, and 1996 Mr. May was an employee, officer, and shareholder of Maranatha Financial Group, Inc. (Maranatha), a corporation with approximately 100 employees. Mr. May was also Maranatha's president and

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

CEO. Mr. May received a biweekly paycheck and pay stub issued by a payroll service provider, Paychex, for his services to Maranatha. The pay stubs reflected biweekly gross pay of $10,000 per pay period. After withholdings for Federal, State, local, and FICA taxes, Mr. May's net paycheck was in the range of $6,500 per pay period.

During the years at issue Mr. May fully controlled the finances of Maranatha. Mr. May had sole check signature authority on Maranatha's corporate bank account and was the sole signatory on payroll checks issued by Paychex on Maranatha's behalf. Mr. May did not sign the paychecks manually, but an electronic facsimile of his signature appeared on all paychecks.

During the years at issue Maranatha withheld all proper taxes from employee paychecks (including Mr. May's) but failed to remit these withholdings to Federal, State, or local tax authorities. Maranatha used at least a portion of the unremitted funds to continue operation of the business, which included paying Mr. May an annual salary of $260,000. Mr. May was admittedly the person responsible for remittance of these withholdings and was aware of the failure to remit them. Mr. May was also responsible for filing Maranatha's Forms 941, Employer's Quarterly Federal Tax Return, but failed to file those forms for the taxable years in issue until early 1997. Because he was the responsible officer, all unremitted withholdings were later assessed against Mr. May under section 6672.

Petitioners timely filed joint Federal income tax returns with the Internal Revenue Service (IRS) for the taxable years 1994, 1995, and 1996. Attached to each tax return was Mr. May's Form W–2, Wage and Tax Statement, issued by Paychex. Petitioners claimed withholding credits each year resulting from amounts withheld from Mr. May's paychecks for Federal taxes. Petitioners also claimed deductions each year for State income taxes paid through withholdings. Petitioners also claimed deductions in 1995 and 1996 for local taxes paid. Petitioners testified that they paid local income taxes by personal check during 1995 and 1996 and produced a copy of a single canceled check issued to and endorsed by the city of Xenia, Ohio, for $2,550 in April 1997.

On April 9, 2002, Mr. May was indicted on two counts of Federal income tax evasion, as well as four counts of willful

failure to account for and pay over payroll taxes while working for Maranatha. The U.S. District Court for the Southern District of Ohio found Mr. May guilty on all six counts. On appeal, the U.S. Court of Appeals for the Sixth Circuit affirmed the conviction but vacated the sentence and remanded the case for resentencing. After resentencing, Mr. May appealed the District Court's resentencing to the Court of Appeals for the Sixth Circuit, which again vacated the sentence and remanded with a directed order of restitution. This second appeal did not address or disturb the underlying conviction.

Evidence at the criminal trial established that Mr. May had used funds in the corporate account for personal expenditures. However, no such evidence was presented in these cases.

On May 4, 2005, respondent issued a notice of deficiency to petitioners for tax years 1994, 1995, and 1996. Petitioners timely filed a petition for redetermination of the deficiencies and penalties.

OPINION

I. *Jurisdiction To Redetermine Section 6663 Fraud Penalties Resulting From Overstated Credits for Taxes Withheld From Wages*

The jurisdiction of this Court is limited by statute and attaches only upon the issuance of a valid notice of deficiency and the timely filing of a petition. *Pietanza v. Commissioner*, 92 T.C. 729, 735 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991). In these cases, the notice of deficiency determined a deficiency relating to disallowed deductions for State and local income taxes, as well as section 6663 fraud penalties applied to the deficiencies and underpayments resulting from overstated credits for tax withholding. Petitioners argue that this Court does not have jurisdiction over any aspect of these cases involving the overstated withholding credits because they do not meet the statutory definition of a tax deficiency so as to form the basis for a valid notice of deficiency.

This Court has previously addressed this issue in *Rice v. Commissioner*, T.C. Memo. 1999–65. *Rice* involved overstated withholding credits which resulted in a section 6663 fraud

penalty but no deficiency. In holding that this Court had jurisdiction to redetermine fraud penalties, including the effect of the overstated withholding credits on the amount of the penalty, the Court stated:

Section 6665 provides that "additions to the tax, additional amounts, and penalties * * * shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes". A deficiency in tax is assessed, collected, and paid only after respondent makes a determination and sends a notice of that determination in accordance with section 6213, which provides for the jurisdiction of this Court. *Eck v. Commissioner*, 16 T.C. 511, 515 (1951), affd. per curiam 202 F.2d 750 (2d Cir. 1953). Thus, respondent, in sending a notice determining petitioner was liable for a section 6663 penalty, was complying with the law that requires him to proceed in the same manner as if there were a deficiency. "The statute was intended to mean * * * that where such a notice was sent, the Tax Court has jurisdiction." *Accordingly, a statutory notice from respondent, in which no deficiency is determined, advising the taxpayer that a penalty for fraud is due, is a valid basis for jurisdiction to this Court*. [*Id.*; emphasis added.]

Applying this logic, we find that this Court has jurisdiction to the extent necessary to redetermine whether any section 6663 fraud penalties are applicable.

## II. *Fraud With Respect to Overstated Withholding Credits*

Respondent has the burden of proving fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b). To satisfy the burden of proof, respondent must show by clear and convincing evidence: (1) An underpayment of tax exists for each year; and (2) Mr. May intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See *Sadler v. Commissioner*, 113 T.C. 99, 102 (1999); *Parks v. Commissioner*, 94 T.C. 654, 660–661 (1990).

### A. *Underpayment of Tax*

Petitioners argue that there is no underpayment of tax in these cases and that without an underpayment respondent cannot properly determine a fraud penalty under section 6663.

Section 6664(a) defines an "underpayment" as:

the amount by which any tax imposed by this title exceeds the excess of—
    (1) the sum of—

(A) the amount shown as the tax by the taxpayer on his return, plus
(B) amounts not so shown previously assessed (or collected without assessment), over
(2) the amount of rebates made.

Section 1.6664–2(c)(1)(i) and (ii), Income Tax Regs., provides that in making the above computation "the 'amount shown as the tax by the taxpayer on his return'" is reduced by the excess of:

(i) The amounts shown by the taxpayer on his return as credits for tax withheld under section 31 (relating to tax withheld on wages) * * * over
(ii) The amounts actually withheld, actually paid as estimated tax, or actually paid with respect to a taxable year before the return is filed for such taxable year.

This regulation encompasses the situation in which a taxpayer overstates the credit for withholding. See also sec. 1.6664–2(g), *Example* (*3*), Income Tax Regs. Accordingly, if a taxpayer overstates prepayment credits, such as the credit for wages withheld, the overstatement decreases taxes due as shown on the return and increases the underpayment of tax. *Rice v. Commissioner*, *supra*.

Petitioners first argue that no underpayment exists because the disallowed withholding credits do not meet the definition of an underpayment under section 6664, taking into account the provisions of section 6211. However, we have found that "restrictions in section 6211(b)(1), excluding estimated tax and withholding credits from the calculation of a deficiency, no longer apply to an underpayment". *Feller v. Commissioner*, 135 T.C. 497, 507–508 (2010). The Court in *Feller* also found that section 1.6664–2(c)(1), Income Tax Regs., validly interprets the definition of "underpayment" in section 6664 and therefore extends the meaning of "underpayment" to include a taxpayer's overstated credits for withholding. *Id.* at 503, 510–511; sec. 1.6664–2(g), *Example* (*3*), Income Tax Regs. As a result, we reject petitioners' first argument.

Petitioners next argue that no underpayment exists because taxes were actually withheld from Mr. May's paychecks and petitioners are entitled to the withholding credits even though the tax withholdings were not paid to the Government. In support of their position, petitioners cite section 1.31–1(a), Income Tax Regs., which states in part that

"If the tax has actually been withheld at the source, credit or refund shall be made to the recipient of the income even though such tax has not been paid over to the Government by the employer."

In *United States v. Blanchard*, 618 F.3d 562, 576 (6th Cir. 2010), the defendant owned and operated his business and withheld taxes from his own paychecks but failed to remit those withholdings to the Government. In affirming the defendant's conviction under 18 U.S.C. sec. 287 for making a false claim for a tax refund with regard to his personal taxes, the court stated:

Rather than creating an overly formalistic division between the personal and official capacities of an individual operating as both employer and employee, which would permit the corporate form to serve as a shield to individual liability, we find it more consonant with the purposes of § 287 to conduct a functional inquiry into whether funds due the government left the defendant's control and so may be deemed "actually withheld" from his wages. * * * [*Id.*]

We agree with the Court of Appeals for the Sixth Circuit that the proper test to determine whether actual withholding at the source occurred should consider whether the funds functionally left the control of a taxpayer. Such a test should not be strictly constrained by the multiple identities one person may have when acting in both a personal and a corporate capacity.

In applying the test, we look to the facts of the case. Mr. May was not only a shareholder, employee, and officer of Maranatha; he was also president and CEO. He was the person responsible for Maranatha's failure to remit tax withholdings (including his own) to the Government and knew that those withholdings were not being remitted. Mr. May had sole check signature authority on Maranatha's corporate bank account, giving him full control of its finances. Even though he was technically subject to tax withholding, we believe Mr. May is more analogous to a person filing a completely falsified Form W–2, given his knowledge and participation in failing to remit the withholdings.

The fact that control of the funds shifted from Mr. May's personal/employee identity to his corporate/employer identity is of no consequence. Mr. May was entrusted with the withheld funds and misappropriated them back to the corporate

account which he controlled, using them to continue operation of the corporation in which he had an equity stake and which paid him an annual salary of $260,000. At all times during and after this act of misappropriation Mr. May determined how those funds would be used. Because Mr. May was responsible for the nonremittance and fully controlled the corporate finances, we conclude that the funds never left Mr. May's functional control and were therefore not "actually withheld at the source" from his wages for purposes of section 1.31–1(a), Income Tax Regs. Section 1.31–1(a), Income Tax Regs., is therefore inapplicable, and petitioners' reliance on it is misplaced.

When a taxpayer has overstated credits for tax withholdings, "the overstatement decreases the amount shown as the tax by the taxpayer on his return and increases the underpayment of tax." *Sadler v. Commissioner*, 113 T.C. at 103; see also sec. 1.6664–2(g), *Example* (*3*), Income Tax Regs. The facts here establish petitioners' liability for the underpayments determined by respondent with respect to such withholdings. As a result, we hold that petitioners have underpayments of taxes of $105,618, $109,276, and $84,776 for years 1994, 1995, and 1996, respectively.

### B. *Fraudulent Intent*

Respondent must prove by clear and convincing evidence that a portion of the underpayment for each taxable year in issue was due to Mr. May's fraud. See *Profl. Servs. v. Commissioner*, 79 T.C. 888, 930 (1982). Once respondent establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is subject to the 75-percent penalty, except with respect to any portion of the underpayment that petitioners establish is not attributable to fraud. See sec. 6663(a) and (b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See *King's Court Mobile Home Park, Inc. v. Commissioner*, 98 T.C. 511, 516 (1992). Mr. May's entire course of conduct may establish the requisite fraudulent intent. See *Stone v. Commissioner*, 56 T.C. 213, 223–224 (1971).

Mr. May was responsible for Maranatha's failure to remit employee tax withholdings, including his own. In spite of his

admitted knowledge and orchestration of Maranatha's failure to remit those withholdings, Mr. May chose to claim credits for the unremitted withholdings on his personal income tax returns. Mr. May was later convicted of tax evasion with respect to his personal income taxes and willful failure to account for and pay over payroll taxes while working for Maranatha.

We conclude that respondent has proved by clear and convincing evidence that petitioners fraudulently underpaid tax for each of the years at issue with respect to the withholding credits. Accordingly, we hold that the 75-percent fraud penalty is justified with respect to the underpayments resulting from overstated withholding credits for the years at issue.

III. *Deficiencies Resulting From Disallowed Deductions for State and Local Income Taxes Paid and Fraud With Respect to any Such Deficiencies*

The Commissioner's determinations in the notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that they are incorrect. See Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). However, the Commissioner has the burden of proving fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b). To satisfy the burden of proof for fraud, the Commissioner must show by clear and convincing evidence: (1) An underpayment of tax exists; and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See *Sadler v. Commissioner*, *supra* at 102; *Parks v. Commissioner*, 94 T.C. at 660–661.

Petitioners make several claims with regard to the unpaid State and local income taxes deducted on their Federal tax returns for the years at issue. Petitioners' first claim is that because the State income tax amounts were withheld by Maranatha from Mr. May's personal paycheck they are entitled to the deduction, even though Maranatha failed to pay over the amounts to State tax authorities. Petitioners' second claim is that if their first claim fails, the State income tax amounts withheld should never have been included in petitioners' gross income, as they never received these withheld amounts. This would result in petitioners' being entitled to

an offsetting deduction equal to the disallowed State income tax deduction with no corresponding deficiency. Petitioners' third claim is that they paid all local income taxes owed for the years at issue. Petitioners' final claim is that the period of limitations has expired because respondent has not proven that the deficiencies are a result of fraud. We shall address each claim in turn.

A. *Whether Petitioners Are Entitled to the Deductions as a Result of the Withholdings*

Petitioners claim that the amounts withheld from Mr. May's paycheck for State income taxes entitle them to Federal income tax deductions for those taxes under section 164. We disagree. Like the withholdings for Federal taxes, the withholdings from Mr. May's paycheck for State income taxes were not remitted to the proper authorities. Those withholdings remained in Maranatha's bank account under the functional control of Mr. May. Mr. May knew of and orchestrated Maranatha's failure to remit the withholdings, using these funds to continue operation of the business in which he owned an equity stake and which employed him at an annual salary of $260,000.

For the same reasons stated above with respect to Federal tax withholdings, we find that no actual withholding occurred with respect to State income taxes. See *supra* pp. 153–154. Consequently, we hold petitioners are not entitled to deductions for any amounts allegedly withheld for State income taxes.

B. *Whether Reductions in Gross Income Resulted*

Petitioners claim that if the amounts withheld from Mr. May's paycheck for State income taxes do not entitle them to deductions, then those amounts should not be included in calculating their gross income because those amounts were withheld from Mr. May's wages and never received by petitioners. We disagree.

We have previously found that Mr. May retained functional control of all withheld funds. See *supra* pp. 153–154. The funds were kept in the account for the corporation of which Mr. May was president, CEO, shareholder, officer, and employee. Mr. May had full control of the corporate finances.

Those funds were used to benefit the corporation in which Mr. May held an equity stake and which paid Mr. May an annual salary of $260,000.

Given Mr. May's actions in keeping the withholdings in Maranatha's account, the amount of control he exercised over the funds in Maranatha's account, and the benefits accruing to Mr. May as a result of the nonremittance, we view these funds more as capital contributions to Maranatha out of Mr. May's paychecks than as funds never received by petitioners. Therefore, the funds were properly included in petitioners' gross income.

### C. *Whether Local Income Taxes Were Paid*

Petitioners claim that no local income taxes were due for 1994 and testified they paid local income taxes of $1,896 and $2,000 for 1995 and 1996, respectively, by personal check. Petitioners produced a copy of a canceled check for $2,550 for the 1996 local taxes endorsed by the city of Xenia, but no such evidence has been produced for taxable year 1995.

In 1996 petitioners owed $2,000 in local income taxes and $1,778 in local real estate taxes. Only the $2,000 in local income taxes was disallowed as a deduction; the $1,778 deduction for local real estate taxes was allowed. Petitioners' check for $2,550 gave no indication of the portion paid toward local income or local real estate taxes. Because the burden of proof is on petitioners, we will assume that the check first went toward paying local real estate taxes of $1,778, with the remaining $772 being paid toward local income taxes.

We find that petitioners have met their burden of proof with respect to $772 of the 1996 local income taxes but not with respect to the 1995 local income taxes. Therefore, petitioners are entitled to a deduction of $772 for 1996 local income taxes. The amount of the deficiency for that year shall be reduced accordingly.

### D. *Whether the Period of Limitations May Be Extended as a Result of Fraud*

Petitioners argue that the normal 3-year period of limitations to issue a notice of deficiency under section 6501(a) has expired and that respondent cannot show fraud to increase

this period of limitations under section 6501(c)(1) because no tax deficiency exists. Petitioners argue in the alternative that even if a deficiency exists, respondent still cannot show fraud because Mr. May's actions amounted only to an honest mistake, negligence, or inadvertence.

We have already found that nonremittance of the State and local income taxes created deficiencies. See *supra* pp. 155–157. The only remaining issue is whether Mr. May's actions were fraudulent.

The burden is upon respondent to prove that Mr. May filed a false return with the intent to evade tax for each year at issue. See sec. 7454(a); Rule 142(b). Because direct evidence of an intent to evade tax is rarely available, intent may be proved by circumstantial evidence and reasonable inferences from the facts. *Petzoldt v. Commissioner*, 92 T.C. 661, 699 (1989).

Mr. May was responsible for Maranatha's failure to remit employee State tax withholdings, including his own. In spite of his admitted knowledge and orchestration of Maranatha's failure to remit such withholdings, Mr. May chose to claim deductions for the unremitted withholdings on his personal tax returns.

We conclude that respondent has proved by clear and convincing evidence that Mr. May filed returns for the years at issue with the intent to evade tax. Therefore, the 3-year period of limitations under section 6501(a) does not apply for any of the years at issue, and respondent was not barred from issuing the notices of deficiency for those years.

### E. *Fraud With Respect to State and Local Tax Deficiencies*

Respondent has established by clear and convincing evidence that Mr. May engaged in fraudulent activity with respect to the deficiencies resulting from disallowed State and local tax deductions. See *supra* pp. 157–158.

Once the Commissioner establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud and subject to a 75-percent penalty, except with respect to any portion of the underpayment that the taxpayer establishes is not attributable to fraud. Sec. 6663(a) and (b); *Sadler v. Commissioner*, 113 T.C. at 105. Petitioners have not met this burden. There-

fore, the fraud penalty is applicable to all remaining deficiencies resulting from State and local income taxes.

## IV. *Conclusion*

We find Mr. May liable in part for deficiencies resulting from disallowed deductions for State and local income taxes paid. We also find Mr. May liable for section 6663 fraud penalties with respect to all claimed withholding tax credits as well as all remaining deficiencies resulting from disallowed deductions for State and local income taxes.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

> *Decision will be entered under Rule 155 in docket No. 14385–05.*

> *Decision will be entered for petitioner in docket No. 4782–07.*